IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BILL MILLENKAMP and SUSIE MILLENKAMP, husband and wife, d/b/a MILLENKAMP CATTLE, | ) ) ) | Case No. CIV 03-439-S-EJL |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM DECISION |
| v. | ) | AND ORDER |
| | ) | |
| DAVISCO FOODS INTERNATIONAL, INC., a a Minnesota Corporation; and CARGILL INCORPORATED, a Delaware Corporation, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court in the above-entitled matter are Plaintiffs' motion for partial summary judgment and Defendant's motion for summary judgment.  The motions have been fully briefed and are ripe for the court's consideration.

Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record.  Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without oral argument.

## FACTUAL BACKGROUND

Plaintiffs, Bill and Sue Millenkamp, maintain a calf-raising business in Idaho under the name "Millenkamp Cattle."  Defendant Davisco Foods International, Inc. is a

MEMORANDUM DECISION AND ORDER - Page 1

Minnesota corporation, registered to do business in Idaho.  During the spring of 2002, the parties discussed and agreed to the sale of  "milk permeate," a product to be added in Plaintiffs' cattle feed.  On or about May 24, 2002, Defendant delivered the product, described on the accompanying invoices as "18% Permeate," to Plaintiffs.  (Docket No. 1, p. 4).  No directions, labels, warnings or instructions on storage or use of the product were included with or attached to the milk permeate when it was delivered.  (Docket No. 1, p. 5).

On May 25, 2002, Plaintiff Bill Millenkamp incorporated half the amount of milk permeate recommended on ration formulation sheets prepared by Co-Defendant Cargill, Inc.'s employee Matt Schmitt into the cattle feed.  (Docket No. 45, p. 7).  Millenkamp included this amount out of concern for the calves' acceptance of the new feed ingredient.  (Docket No. 40, p. 5).   The following day, Millenkamp incorporated the full amount of milk permeate product into his cattle feed.  During these first two days of feeding the calves the new product, Millenkamp did not notice any changes in the calves' health.  (Docket No. 40, p. 6).  Beginning on the third day of incorporating the milk permeate into the calves' feed, Millenkamp's cattle became ill and on the fourth day, up to 80 sick calves were being treated.   Millenkamp thereafter mixed the feed rations without the milk permeate.  (Docket No. 40, p. 7).  Meanwhile, starting the fourth day, the calves started to die at a rapid pace and the deaths continued for three to four months; approximately 150 calves died in total.  (Docket No. 40, p. 8-9).  As a result, Plaintiffs filed the instant complaint alleging: 1) breach of express warranty; 2) breach of implied warranty of fitness for a particular purpose; 3) negligent failure to warn; 4) negligence *per se*; and 5) negligence.

MEMORANDUM DECISION AND ORDER - Page 2

The Plaintiffs' motion seeks summary judgment as to their negligence *per se* claim  which alleges Defendant Davisco was negligent *per se* when it failed to label the product and provide directions or precautionary statements necessary for safe and effective use of commercial feeds as required by Idaho Code §25-2719 and Idaho Administrative Code § 02.06.02.250.03.  Defendant claims the labeling requirement does not apply because what it sold to Plaintiff  does not constitute "commercial feed" as defined by the administrative regulations.

The Defendant's motion seeks summary judgment as to all of the negligence claims, claiming Plaintiffs failed to establish causation and are seeking purely economic damages, which are not recoverable under a negligence cause of action in Idaho. Plaintiffs argue that causation has been demonstrated by expert testimony linking the calves' sickness to Defendant's product and the economic damages are recoverable under the "special relationship" and/or "unique circumstances" exception to the economic loss rule.

**STANDARD OF REVIEW**

I.     Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

MEMORANDUM DECISION AND ORDER - Page 3

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).  If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine."  An issue is "material" if it affects the outcome of the litigation.  A "genuine" issue is established by "sufficient evidence supporting the claimed factual dispute .  .  . to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)).  The Ninth Circuit cases are in accord.  See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

In the Ninth Circuit, in order to withstand a motion for summary judgment, a party must:

> 1)  make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; 2) show that there is an issue that may reasonably be resolved in favor of either party; and 3) come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

MEMORANDUM DECISION AND ORDER - Page 4

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

II.      Negligence *Per Se*

Negligence *per se* results from the violation of a specific requirement of law or ordinance, and is a question of law to be determined by the court.  Ahles v. Tabor, 34 P.3d 1076, 1078 (Idaho 2001).  By establishing negligence *per se* through a violation of a statute, a party conclusively proves the first two elements, duty and breach, of a negligence cause of action.  Slade v. Smith's Management Corp., 808 P.2d 401, 408 (Idaho 1991).

Several criteria must be met in order to establish negligence *per se*:

1) the statute must clearly define the required standard of conduct; 2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; 3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and 4) the violation must have been the proximate cause of the injury.

Ahles, 34 P.3d at 1078-79.

**ANALYSIS**

I.      Plaintiffs' Motion:  Negligence *Per Se*

Plaintiffs, in their motion, claim the requirements for negligence *per se* have been met in this action because Defendant failed to include directions and/or safety precautions for safe and effective use of commercial feed when Defendant sold and delivered the milk permeate product to Plaintiffs.  Plaintiffs contend such failure violated the Idaho Code's provisions and Idaho Department of Agriculture regulations concerning

MEMORANDUM DECISION AND ORDER - Page 5

the labeling of commercial animal feeds.  Defendant argues the product it sold to Plaintiffs does not fall under the statute or regulations, as it does not meet the definition of "commercial feed," and thus the labeling requirement does not apply.

Idaho Code § 25-2719 and Idaho Administrative Code § 02.06.02.250.03 require adequate directions and precautionary statements for safe and effective use to be included on labels for "commercial feed."  Thus, in order for these requirements to apply to the product sold by Defendant to Plaintiffs, it must first be established that the milk permeate product is a "commercial feed." Idaho Code §25-2717 defines "commercial feed" as "all materials or combinations of materials which are distributed or intended for distribution for use as feed."  Idaho Department of Agriculture administrative rule 02.06.02.010, Definition and Terms (hereinafter "Rule 10") provides:

> The names and definitions for commercial feeds shall be the Official Definition of Feed Ingredients adopted by the Association of American Feed Control Officials (AAFCO) except as the Director designates otherwise in specific cases.  The terms used in reference to commercial feeds shall be the Official Terms adopted by the AAFCO, except as the Director designates otherwise in specific cases.

The Official Terms definition of "commercial feed" refers to the AAFCO Model Bill, which defines "commercial feed" as "all materials or combination of materials distributed or intended for distribution for use as feed or for mixing in feed, unless such materials are specifically exempted."

Plaintiffs contend the milk permeate falls under the general definition of "commercial feed" adopted by the AAFCO, in the Model Bill, as the product was distributed for use as feed for livestock.  Defendant, however, focuses on the first sentence ("names and definitions") of Rule 10, and argues that the milk permeate is not a

MEMORANDUM DECISION AND ORDER - Page 6

commercial feed, as neither it nor its ingredients can be found in the Official Names and Definitions of Feed Ingredients list included in the AAFCO Official Publication.

Defendant's contention that the milk permeate product sold to Plaintiffs does not constitute commercial feed because it is not found in the list of ingredient definitions disregards the AAFCO's definition of "commercial feed" listed as one of the association's Official Terms. That definition makes no mention of, or reference to, the ingredients list. Instead, the definition focuses on the use, intended or otherwise, to which the distributed material is put. Furthermore, the definition refers broadly to "all materials" used as feed, not to the Official Names and Definitions of Feed Ingredients list. If the code drafters intended to restrict the regulation of commercial feed to those items specifically listed in the ingredients section, it seems they would have included some reference to the Feed Ingredients list in the definition rather than drafting a broad, general definition of "commercial feed" that appears to be concerned only with the use to which the materials are put, not to the composition of the materials themselves. Thus, it seems clear the general definition of "commercial feed" controls in this instance, and the "names and definitions" enunciated in Rule 10 refers only to definitions of specific ingredients comprising commercial feed.

Therefore, because the milk permeate sold by Defendant was intended to be used as feed and has not been specifically exempted, it fits the definition of "commercial feed" adopted by the AAFCO and included in Idaho Code § 25-2717. Defendant thus had a duty, as required by IDAPA § 02.06.02.250.03 and Idaho Code § 25-2719, to include adequate directions and precautionary statements necessary for safe and effective use of the milk permeate product. Defendant breached that duty when it failed to provide such

MEMORANDUM DECISION AND ORDER - Page 7

materials.  Summary judgment in favor of the Plaintiffs on the issue of negligence *per se*, however, is inappropriate until issues raised in Defendant's motion for summary judgment are considered and decided below.

II.    Defendant's Motion:  Economic Loss

Defendant, in its motion for summary judgment, contends: 1) Plaintiffs failed to establish the causation requirement in their negligence claims, as Plaintiffs provided no scientific evidence demonstrating the actual cause of Plaintiffs' calves' injuries; and 2) Plaintiffs allege damages for purely economic losses, which are not recoverable in a negligence action in Idaho.  In response, Plaintiffs argue that causation has been proven as the experts on behalf of Plaintiffs have linked the death and sickness of the calves to rumen acidosis, and the rumen acidosis to the milk permeate.  Additionally, Plaintiffs contend their economic damages are recoverable under a negligence cause of action because the statute and regulations at issue give rise to a special relationship between the parties and the unique circumstances of the case warrant a different allocation of the risk.

The "economic loss rule" prohibits recovery of purely economic losses in a negligence action, unless an exception applies.  Blahd v. Richard B. Smith, Inc., 108 P.3d 996, 1000 (Idaho 2005) (citing Duffin v. Idaho Crop Improvement Association, 895 P.2d 1195, 1200 (Idaho 1995)).   The rule applies to negligence cases in general, not simply to products liability cases.  Ramerth v. Hart, 983 P.2d 848, 851 (Idaho 1999).  "Economic loss" includes costs of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss of profits or use.  Blahd, 108 P.3d at 1000.  Alternatively, property damage encompasses damage to property other than that which is the subject of the transaction.  Salmon Rivers Sportsman Camps, Inc. v. Cessna Aircraft

MEMORANDUM DECISION AND ORDER - Page 8

Co., 544 P.2d 306, 309 (Idaho 1975).   For purposes of the economic loss rule, "transaction" does not mean a business deal; rather, it means the subject of the litigation. Blahd, 108 P.3d at 1000.

There are two exceptions to the economic loss rule: the existence of a special relationship between the parties and unique circumstances requiring a reallocation of the risk.

A.      Special Relationship Exception

A "special relationship" refers to situations where the relationship between the parties is such that it would be equitable to impose a duty to prevent economic loss to another.  Duffin, 895 P.2d at 1201.  This is an "extremely limited group of cases where the law of negligence extends its protections to a party's economic interest." Blahd, 108 P.3d at 1001 (quoting Duffin, 895 P.2d at 1201.).

The Idaho Supreme Court has recognized two situations in which the "special relationship" exception applies.    The first is where a professional or quasi-professional performs personal services.  McAlvain v. General Insurance Company of America, 554 P.2d 955, 958 (Idaho 1976).   In that case, the Court held an insurance agent who performs his services negligently should be held liable for that negligence, as would "an attorney, architect, engineer, physician, or any other professional who negligently performs personal services." Id.

The second situation giving rise to a special relationship is where an entity holds itself out to the public as having expertise regarding a specialized function and knowingly induces reliance on its performance of that function.  Blahd, 108 P.3d at 1001 (citing Duffin, 895 P.2d at 1201.).   In Duffin, the Court found a special relationship

MEMORANDUM DECISION AND ORDER - Page 9

existed between the Idaho Crop Improvement Association, the only entity in Idaho authorized to certify seed potatoes, and a farmer who relied on the Association's expertise when buying certified seed because the Association engaged in a marketing campaign "to induce reliance by purchasers." Id.

      B.    <u>Unique Circumstances Exception</u>

      Where unique circumstances exist, requiring a different allocation of risk between the parties, economic damages may be recoverable under a negligence cause of action. <u>Blahd,</u> 108 P.3d at 1002 (citing <u>Just's Inc. v. Arrington Construction Company,</u> 583 P.2d 997, 1005 (Idaho 1978)).  While the Idaho Supreme Court has recognized this exception to the economic loss rule, it has never applied the exception.  <u>Id.</u>  Neither the certification of seed potatoes in <u>Duffin,</u> nor the purchase of a residential house in <u>Blahd</u> constituted "unique circumstances" requiring a re-allocation of the risk between the parties.

      C.    <u>Conclusion</u>

      Plaintiffs contend the Idaho statue and regulations create a special relationship between the parties and warrants a different allocation of the risk.  This argument, however, does not fall under any of the recognized exceptions to the economic loss rule. Neither the special relationship exception nor the unique circumstances exception apply in this case.  Defendant did not perform any personal services for Plaintiffs; rather, the parties engaged solely in a sale of a product.  Such activity is not comparable to the services performed by an architect, engineer, or physician, which the Idaho Supreme Court has recognized has creating a special relationship.  Moreover, while the manufacture and sale of cattle feed could be considered a specialized function, no evidence has been presented establishing that Defendant represented its expertise to the

MEMORANDUM DECISION AND ORDER - Page 10

public, or that it knowingly induced reliance on its performance because of such expertise.  To find that a special relationship exists between all individuals subject to the statute and regulations at issue in this case would be to disregard the "extremely limited" application of the exception to the economic loss rule.

Furthermore, the sale and purchase of a particular product does not create the type of "unique circumstance" required to justify a different allocation of risk between the parties warranting relief via a negligence claim.  Therefore, because Plaintiffs are seeking purely economic damages and no exception to the economic loss rule applies to facts and circumstances of this case, summary judgment in favor of the Defendant is appropriate as to Plaintiffs' negligence and negligence *per se* claims.

## ORDER

Based on the foregoing, and being fully advised in the premises, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 39) is **DENIED** and Defendant's Motion for Summary Judgment (Docket No. 45) is **GRANTED**.  Trial on the remaining claims is set for January 17, 2006.

DATED:  **June 20, 2005**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM DECISION AND ORDER - Page 11